STATE OF MAINE

TENTH DISTRICT COURT
RECEIVED STATE OF MAINE Division of Eastern York
Civil Action
2007 JUN 22 P 12: 06   Docket No. CV-06-228

| | |
|---|---|
| STATE OF MAINE,<br>Department of Environmental Protection,<br><br>Plaintiff,<br><br>v.<br><br>WINTERWOOD ACRES, INC.,<br><br>WINTERWOOD FARM, LLC, and<br><br>BELTIE, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CONSENT DECREE AND ORDER<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1. In this Court on or about August 26, 2006, the Plaintiff filed a Land Use Citation and Complaint seeking civil monetary penalties and injunctive relief against Winterwood Acres, Inc., Winterwood Farm, LLC, and Beltie, Inc. regarding conditions existing on property located at 100 Not-a-Road in the Town of Lyman, Maine.

2. The Plaintiff and Defendant, hereinafter referred to jointly as the "parties", desire to resolve the above captioned matter without further litigation and have, as evidenced by their authorized representative's signature on this Consent Decree and Order, agreed to entry of this resolution.

3. By signing this Consent Decree and Order, the Parties agree that it constitutes final resolution of the issues specifically alleged in the Plaintiff's pleadings and in Plaintiff's Notice of Violation issued to the Defendants dated December 22, 2006. The parties each waive any right that they may have to appeal from the rendition and entry of this Order.

4. This Court has jurisdiction over the subject-matter of the above captioned matter, parties hereto, and relief and remedy sought, pursuant to 4 M.R.S.A. § 152(6-A)(N) and 38 M.R.S.A. §§ 342(7), 347-A(1)(A)(4), 348, and 349.

5. Winterwood Acres, Inc. ("Winterwood Acres") is a corporation which is organized and exists under the laws of the State of Maine and which owns and manages real estate. Winterwood Acres owns a parcel of land at 100 Not-a-Road, Lyman, Maine as described and recorded in Book 10214 on Page 252 of the York County Registry of Deeds ("Winterwood Acres Property"). Robert L. St. Onge is the President of Winterwood Acres.

6. Winterwood Farm, LLC ("Winterwood Farm") is a limited liability company which is organized and exists under the laws of the State of Maine and which operates a commercial composting facility on the Winterwood Acres property in association with Beltie, Inc. Robert L. St. Onge is a managing member of Winterwood Farm, LLC.

7. Beltie, Inc. ("Beltie") is a corporation which is organized and exists under the laws of the State of Maine and which operates a commercial composting facility on the Winterwood Acres property in association with Winterwood Farm, LLC. Robert L. St. Onge is the President of Beltie, Inc.

8. The Winterwood Acres property and the composting business operated by Winterwood Farm and Beltie are hereinafter collectively referred to as the "Winterwood Compost Facility."

9. The Winterwood Acres property is adjacent to two unnamed tributaries that flow into Lords Brook in Lyman, Maine. Lords Brook and its tributaries, pursuant to 38 M.R.S.A. § 467(9), are Class B waters.

10. Throughout the period of time addressed by this Order, Winterwood Acres, Winterwood Farm, and Beltie were subject to the requirements of Maine's *Water Pollution Control* law, 38 M.R.S.A. § 413(1); *Maine Hazardous Waste, Septage and Solid Waste Management Act*, 38 M.R.S.A. § 1306(1); Solid Waste Management rules for *Processing Facilities*, 06-096 CMR 409 (effective September 6, 1999); and the terms and conditions of Department Order S-021773-CF-D-T.

11. Winterwood Farm and Beltie have a Type I Composting Facility License issued by the Department to compost Type IA, IB and IC residuals, including but not limited to horse bedding, fish waste and/or other food wastes, on the Winterwood Acres property (Order S-

021773-CF-D-T issued to Winterwood Farm on September 19, 2001; Beltie added as a co-licensee in Order S-021773-CF-E-A on October 7, 2003).

12. Standard Condition #1 of Department Order S-021773-CF-D-T provides that:
    > The granting of this approval is dependent upon and limited to the proposals and plans contained in the application and supporting documents submitted and affirmed by the license. Any consequential variation from these plans, proposals, and supporting documents is subject to review and approval prior to implementation.

13. The application proposal underlying Department Order S-021773-CF-D-T included the construction of a detention pond of specific dimensions to handle runoff of storm water from the composting operations.

14. In the Lyman area, where the Winterwood Compost Facility is located, rain events early in October 2005 on two days rise to the level of what the Northeast Regional Climate Center at Cornell University, using data collected from local National Oceanic and Atmospheric Administration stations, classifies as a "two-year, single day event", on one day to the level of a "25-year, single day event", with the period as a whole meeting criteria of a "25 year, 10-day event". In addition, in 2005 York County received more inches of rain fall than had ever been recorded in any one year since meteorological records have been maintained in Maine. See www.ncdc.noaa.gov/oa/climate/research/2005 as published by the National Climate Data Center/ National Oceanic and Atmospheric Administration.

15. On November 1, 2005 and November 3, 2005, the Department received two separate complaints that there was a white substance present in the water of Lords Brook located in Lyman, Maine. Both complaints also stated that an offensive odor was emanating from the brook. On November 4, 2005, Department staff visited Lords Brook to investigate the white substance and odor. The inspection revealed a large amount of white growth attached to the streambed and branches of the brook. The white growth was eventually identified as

apodachlya brachynema, a fungus that is harmless in naturally occurring quantities, and sphearotilus natans, a bacteria. Such growths are caused by excess quantities of organic matter. At that time, Department staff traced the white growth upstream to, but not above, the Winterwood Compost Facility. In subsequent site visits, the Department documented the presence of the white growth on November 7, 2005, November 10, 2005, November 16-17, 2005, November 22, 2005, December 1, 2005, May 26, 2006, June 6, 2006, and June 13, 2006.

16. The Department followed up its November 4, 2005 visit to Lords Brook with a November 7, 2005 inspection of the Winterwood Compost Facility. Department staff observed that the rain fall levels had exceeded the holding capacity of the Winterwood compost facility detention pond. As a result, Department staff observed that leachate, a liquid that has passed through or emerged from solid waste, was discharging directly from compost windrows at the Winterwood Compost Facility through the detention pond areas and flowing into wetlands that flow into an unnamed tributary of Lords Brook (East Tributary) located adjacent to the facility. In addition, a detention pond located on the eastern side of the facility had breached due to the wet conditions and was discharging leachate contaminated storm water into wetlands that flow into the East Tributary. During the November 7, 2005 inspection, Department staff also found that leachate and leachate contaminated storm water were discharging from the southwest portion of the Winterwood Compost Facility. This leachate and leachate contaminated storm water was flowing into wetlands adjacent to the composting operation that drains into another unnamed tributary of Lords Brook (Southwest Tributary).

17. Under 38 M.R.S.A. § 413(1), no person may directly or indirectly discharge or cause to be discharged any pollutant without first obtaining a license therefor from the Department. Under

38 M.R.S.A. § 361–A(1), a discharge includes spilling, leaking, or other addition of any pollutant to waters of the State. Wetlands and brooks are considered "waters of the State" as that term is defined in 38 M.R.S.A. § 361–A(7). The definition of a pollutant includes chemicals and biological materials. 38 M.R.S.A. § 361–A(4–A).

18. During the Department's November 4, 2005 and November 7, 2005 inspections, described above, Department staff observed and/or measured discharges of leachate and leachate contaminated storm water from the Winterwood Compost Facility to tributaries of Lords Brook. The leachate and leachate contaminated storm water contained pollutants, including but not limited to elevated levels of ammonia, bacteria, and oxygen demanding compounds. Ammonia and oxygen demanding compounds constitute chemicals. Bacteria constitutes a biological material. Thus, the leachate and leachate contaminated storm water are pollutants as defined in 38 M.R.S.A. § 361–A(4–A). In subsequent site visits, the Department documented discharges of contaminated storm water on November 10, 2005, November 16, 2005, November 22, 2005, December 1, 2005, January 19, 2006, May 3, 2006, May 15, 2006, May 26, 2006, May 31, 2006, June 6, 2006 and June 13, 2006. Neither Winterwood Acres, Winterwood Farm, nor Beltie obtained a license from the Department to discharge pollutants to waters of the state. By allowing a discharge of pollutants to enter waters of the state without obtaining a permit from the Department, Winterwood Acres, Winterwood Farm and Beltie violated 38 M.R.S.A. § 413(1).

19. On November 17, 2005, Department staff inspected the Winterwood Compost Facility to assess how it was managing its leachate and storm water and to determine whether it complied with a previously issued Department solid waste licensing Order, S-021773-CF-D-T. While the

Department had previously determined that the Winterwood Compost facility complied with the original design submitted to the Department, during the inspection, Department staff discovered that the detention pond located on the east side of the facility was approximately one quarter (1/4) the size approved by Department Order S-021773-CF-D-T.

20. Under 38 M.R.S.A. § 1306(1), it is unlawful for any person to establish, construct, alter or operate any waste facility without a permit issued by the Department. By constructing the detention pond in a manner not approved in Department Order S-021773-CF-D-T, Winterwood Acres, Winterwood Farm, and Beltie violated 38 M.R.S.A. § 1306(1).

21. Standard Condition #1 of Department licensing Order S-021773-CF-D-T states that Department approval of a permit is dependent upon and limited to the proposals and plans contained in the application and the supporting documents submitted and affirmed by the license. Furthermore, Standard Condition #1 requires that any consequential variation from the approved plans, proposals and supporting documents be reviewed and approved by the Department prior to implementation. While the Department had previously determined that the facility was in compliance with the original application, by constructing the detention pond in a manner inconsistent with the original plans related to Department licensing Order S-021773-CF-D-T, Winterwood Acres, Winterwood Farm, and Beltie violated Standard Condition #1 of its license.

22. Under Special Condition #2 of Department licensing Order S-021773-CF-D-T, Winterwood Farm and Beltie must comply with all applicable rules and regulations including the operating standards found in the Department's rules for *Processing Facilities*, 06-096 CMR 409.4 and .9(C). Pursuant to 06-096 CMR 409.4(B)(1), a processing facility must be operated in a

manner that assures it will not contaminate ground or surface water and will meet the standards in 06-096 CMR 400.4. Pursuant to 06-096 CMR 400.4(H)(1)(a), a solid waste facility may not discharge any water pollutants, directly or indirectly, that affect the state classification of a surface water body, as specified in 38 M.R.S.A. § 464.

23. Pursuant to 38 M.R.S.A. § 464(4)(B), all surface waters of the State shall be free of settled substances which alter the physical or chemical nature of bottom material and of floating substances, except as naturally occur, which impair the characteristics and designated uses ascribed to their class. Department staff observed a large amount of white growth attached to the streambed and branches of Lords Brook and its tributaries. This growth occurs when excess quantities of organic material or matter are present, which in this case caused the water quality in Lords Brook and its tributaries to fall below the standards applicable to its "B" classification.

24. On February 10, 2006 the Department issued a Notice of Violation to Winterwood Acres, Winterwood Farm, and Beltie for the violations described in paragraphs 15 through 24 of this Order, in conformance with 38 M.R.S.A. § 347-A(1)(B). In addition, the Department issued a Notice of Violation to Winterwood Acres, Winterwood Farm and Beltie for other violations dated December 22, 2006.

25. Action taken pursuant to this Order shall be completed in accordance with the requirements of all applicable local, state, and federal laws, including but not limited to, permitting or licensing requirements.

26. This Court retains jurisdiction over the above captioned matter for the purpose of modifying, clarifying, or directing additional activities that fail to be resolved through agreement. Any modification to the terms of this agreement outside of a judicial proceeding must be done so in writing and shall be signed by all parties. Such modifications need not be presented to or approved by the Court.

27. Nothing in this Consent Decree and Order shall be construed to limit other necessary and appropriate remedies consistent with this Consent Decree and Order, including but not limited to contempt proceedings under Maine Rule of Civil Procedure 66, or the exercise of emergency powers existing under Title 38 or any other State law. Any such activities may only come before this Court on proper motion by either party.

THEREFORE, finding that the terms and conditions of the resolution detailed in this Consent Decree and Order are just, reasonable and in the public interest, it is ORDERED, ADJUDGED AND DECREED as follows:

1. By May 30, 2007, Winterwood Farm and Beltie shall submit an application to the Department that is complete for processing for a spray irrigation wastewater discharge license for the Winterwood Compost Facility consistent with the materials identified in a pre-application meeting to be held at the Winterwood Compost Facility, the Department's rules for *Applications for Waste Discharge Licenses*, 06-096 CMR 521, and all other applicable State statutes and rules.

2. By December 18, 2007, Winterwood Farm and Beltie shall supplement the pending solid waste minor revision application (Department application #S-021773-CF-F-M) consistent with the materials identified in a pre-application meeting, the Department's rules for solid waste

facilities *General Provisions*, 06-096 CMR 400 and *Processing Facilities*, 06-096 CMR 409, and all other applicable State statutes and rules. These materials are anticipated to at least include a: detailed and scaled site plan fully depicting the facility's current configuration; stormwater management plan; leachate management plan; erosion and sedimentation control plan; and comprehensive inspection and maintenance operations manual.

3. At the time materials are submitted pursuant to paragraph 2 of this section, Winterwood Farm and Beltie shall submit to the Department's stormwater management program a Notice of Intent to Comply under the State's General Permit pursuant to Maine's Multi Sector General Permit for Stormwater Discharge Associated with Industrial Activity.

4. Winterwood Acres, Winterwood Farm, and Beltie shall pay the *Treasurer, State of Maine*, a civil monetary penalty of $50,000.00, all of which is suspended, contingent on full and timely compliance with all conditions contained in this Consent Decree and Order, due to the Defendant's current inability to pay as documented in the Department's analysis of financial data specifically requested and submitted. A failure to complete the conditions as detailed in this Order results in the full penalty being immediately due and owing upon the Department's request. If Defendants complete the conditions as detailed in this Order then the suspended penalty will be permanently waived.

5. Winterwood Acres, Winterwood Farm, and Beltie shall allow the Department, or an authorized representative (including an authorized contractor acting as a representative), upon presentation of credentials and other documents as may be required by law, to:

(a) Enter upon the Defendants' premises where a regulated facility or activity is located or conducted, or where records must be kept under the conditions of any applicable Department licenses;

(b) Have access to and copy, at reasonable times, any records that must be kept under the conditions of any applicable Department licenses;

(c) Inspect at reasonable times any facilities, equipment (including monitoring and control equipment), practices, or operations regulated or required under any applicable Department licenses; and

(d) Sample or monitor at reasonable times, for the purposes of assuring compliance with any applicable Department licenses any substances or parameters at any location within the facility regulated by said applicable Departmental licenses.

6. Each party will pay its own attorney's fees. At the direction of the Court, this Order shall be incorporated into the docket by reference. Rule 79(a).

Dated: 8/10/07

Justice / ~~Judge~~ / District Court

**SEEN AND AGREED TO:**

Dated: 6/20/2007

**STATE OF MAINE**

Peter J. Carney
Authorized Representative

**WINTERWOOD ACRES, INC.**

Dated: 6/11/07

By: Robert L. St. Onge, President

A TRUE COPY ATTEST
CLERK

**WINTERWOOD FARM, LLC**

Dated: 6/11/07

_____
By: Robert L. St. Onge, Managing Member

**BELTIE, INC.**

Dated: 6/11/07

_____
By: Robert L. St. Onge, President

**ATTORNEY FOR DEFENDANTS**

Dated: 6/12/07

_____
William S. Kany, Esq.