| STATE OF MAINE | TENTH DISTRICT COURT |
| --- | --- |
| YORK, ss | Division of Eastern York |
| | Civil Action |
| | Docket No. CV-06-228 |

| | | |
| --- | --- | --- |
| STATE OF MAINE,<br>Department of Environmental Protection, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CONTEMPT MOTION &<br>MEMORANDUM |
| WINTERWOOD ACRES, INC., | ) ) | (M.R. Civ. P. 66(d)) |
| WINTERWOOD FARM, LLC, | ) ) | |
| and | ) ) | |
| BELTIE, INC., | ) ) | |
| Defendants. | ) | |

## MOTION

NOW COMES the Plaintiff Department of Environmental Protection ("Department") through the Office of the Attorney General and hereby moves this Court to enter an Order, in the attached form, holding Defendants Winterwood Acres, Inc., Winterwood Farm, LLC and Beltie, Inc. (hereinafter collectively "Winterwood"), in contempt for failure to comply with the Consent Decree and Order entered by this Court on August 10, 2007, and ordering remedial sanctions. Specifically, the Department seeks an order imposing injunctive relief and coercive fines as contained in Schedule A, attached to this motion and incorporated herein by reference. This motion is based on the fact that the Defendants, in violation of Paragraph 1 of the Consent Decree and Order, failed to submit an application to the Department that is complete for processing and otherwise consistent with Department rules for a spray irrigation wastewater discharge license by May 30, 2007; in violation of Paragraph 2 of the Consent Decree and Order,

failed to supplement the pending solid waste minor revision application (Department application #S-021773-CF-F-M) consistent with the materials identified in a pre-application meeting, the Department's rules for solid waste facilities *General Provisions*, 06-098 CMR 400 and *Processing Facilities*, 06-096 CMR 409, and all other applicable State statutes and rules; in violation of Paragraph 3 of the Consent Decree and Order, failed to submit to the Department's stormwater management program a Notice of Intent to Comply under the State's General Permit pursuant to Maine's Multi Sector General Permit for Stormwater Discharge Associated with Industrial Activity; and in violation of Paragraph 5 of the Consent Decree and Order, has failed to allow the Department, or its authorized representatives, access to the premises or its records for the purposes of monitoring and inspection.

The Defendants have filed petitions for Chapter 12 bankruptcy with the United States Bankruptcy Court for the District of Maine under case numbers 07-21016 (Beltie, Inc.), 07-21017 (Winterwood Farm, LLC) and 07-21018 (Winterwood Acres, Inc.). Because this motion is brought to enforce the Department's regulatory powers through the imposition of injunctive relief and coercive fines, the automatic stay provisions of the U.S. Bankruptcy Code do not apply. 11 U.S.C. § 362(b)(4). A longstanding exception to the automatic stay provides that governmental units are not enjoined from taking actions to enforce their police powers. *See, In re: Gerald Nelson*, 240 B.R. 802, 803 (U.S. Bankruptcy Court for the District of Maine, 1999). The bankruptcy court is not a haven for wrongdoers, and the policy of the Bankruptcy Code is to permit regulatory, police and criminal actions to proceed in spite of its automatic stay provisions. Id. at 804.

THIS MOTION IS MADE pursuant to Maine Rules of Civil Procedure 7 and 66(d), and is based upon the Plaintiff's Complaint filed on or about August 28, 2006, the Consent Decree and Order accepted August 10, 2007, and upon the Memorandum of Law annexed hereto.

## **MEMORANDUM OF LAW**

The Defendants were served with Plaintiff's Land Use Citation and Complaint on August 23, 2006 alleging violations of the following: Maine's *Water Pollution Control* laws, 38 M.R.S.A. § 413(1); the *Maine Hazardous Waste, Septage and Solid Waste Management Act*, 38 M.R.S.A. § 1306(1); the Department's Solid Waste Management rules for *Processing Facilities*, 06-096 CMR 409; and Department licensing order S-021773CF-D-T. The Complaint was filed with this Court on or about August 28, 2006. The parties agreed to a resolution of the alleged violations in a Consent Decree and Order signed by this Court on August 10, 2007.

Paragraph 1 of the Consent Decree and Order requires: "[b]y May 30, 2007, Winterwood Farm and Beltie shall submit an application to the Department that is complete for processing for a spray irrigation wastewater discharge license for the Winterwood Compost Facility consistent with the materials identified in a pre-application meeting to be held at the Winterwood Compost Facility, the Department's rules for *Applications for Waste Discharge Licenses*, 06-096 CMR 521, and all other applicable statutes and rules."

It is imperative that Winterwood acquire a wastewater discharge license so that wastewater from the facility's composting operations is properly handled. As set forth in the Consent Decree and Order, Winterwood's illegal discharge of wastewater resulted in excessive growths of bacteria and fungus in an adjacent stream ultimately causing water quality in the stream to fall below statutory water quality classifications. Because the Winterwood facility does not have adequate wastewater storage an ongoing precipitous situation exists. The facility's

detention ponds, which collect leachate from compost piles as well as stormwater and leachate contaminated stormwater, are in continuous danger of overflowing and thereby permitting direct discharges of wastewater to adjacent wetlands and the stream and its tributaries. In enforcement discretion letters issued by the Department on May 23, 2006 and May 17, 2007 the Department took the extraordinary measure of providing Winterwood with the opportunity to conduct spray irrigation prior to the facility receiving its wastewater discharge license as doing so was the only feasible means of preventing direct discharges of wastewater to the wetlands and stream. Exercise of the Department's enforcement discretion was intended only as an interim measure until an appropriate license could be issued.

While the Defendants did file an application on May 30, 2007, the application was not complete for processing or consistent with the requirements of applicable rules. What constitutes "complete for processing" is set forth in the Department's *Rules Concerning the Processing of Applications*. See 06-096 CMR 2(11)(B). A determination that an application is complete for processing requires that the application form is properly filled out and information is provided for each of the items required by the form. See id.; see also 06-096 CMR 521(2) & (4)(a). The burden of proof is on the applicant to affirmatively demonstrate to the Department that all licensing criteria have been met. See 06-096 CMR 2.11(F).

After initially accepting Winterwood's application on June 20, 2007, the Department became aware of a deficiency fatal to the Department's acceptance and processing of the application. Applicable Department rules require that public notice of applications be made by the applicant. See 06-096 CMR 2(14)(A). The notice requirement is an integral part of the public process associated with licensing, and is especially critical where, as here, abutting property owners have shown an active interest in the matter. Public notice must be mailed to

property owners abutting the location where the licensed activity would occur, mailed to the municipal office where the project is located, and be published in a newspaper circulated in the area where the activity would take place. See id. In addition, Department rules require that when a license application is filed with the Department, a copy of the license application must be filed by the applicant with the appropriate town clerk. See 06-096 CMR 11(G).

The Department's determination of whether the public notice and municipal filing requirements have been fulfilled is made by the applicant's certification that publication and filing was done. The certification made by applicants on the Department's waste discharge license application form reads as follows:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.
>
> Additionally, by signing below, I certify that
> (1) notice of this application has been made by publication in _____ (name of newspaper) newspaper circulated in the area where the project site is located on or about _____ (a copy of the advertising form is included in this application); (2) notice has been sent by certified mail or Certificate of Mailing to owners of land abutting the discharge site (a copy of the list of abutters is included in this application); and (3) notice and a copy of this application have been provided to the clerk of the municipality(ies) where the discharge is located.
>
> The forgoing steps have been taken in accordance with the instructions attached to this application and the provisions of Chapters 2 and 522 of the Department's rules.

This certification was signed, dated, and submitted with the Defendants' application on May 30, 2007, indicating public notice would be made in the *Journal Tribune* on or about May 31, 2007, that notice had been mailed to abutting landowners, that notice had been provided to the municipality where the discharge is located, and that a copy of the application had been filed with the town. The Department accepted the Defendants' application as complete for processing relying on this certification.

After speaking with an abutting landowner the Department had reason to believe that the Defendants had not provided public notice as certified. After the initial indication from the neighboring landowner, Department staff contacted the *Journal Tribune* which could not identify any public notice concerning the waste discharge application for the Winterwood facility. Department staff also contacted the Town Clerk for the Town of Lyman who confirmed after a search of records that the Town had neither been provided with public notice nor a copy of the license application. Department staff then contacted Mr. St. Onge who stated that he had forgotten to publish notice. Department staff brought the deficiencies to the Defendants' attention via mail and email on October 10, 2007, and provided an opportunity to correct the deficiencies by October 16, 2007, by either performing the necessary activities if they had not been done, or by providing proof that the activities had been completed. The Defendants provided no evidence that the notice and filing requirements had been met by the close of business on October 16. In a follow-up call between Mr. St. Onge and Department staff on October 18, it was Mr. St. Onge's position that the Winterwood facility did not need a wastewater discharge license.

After speaking with an abutting landowner, the *Journal Tribune*, the Town of Lyman, and Mr. St. Onge, the Department has no evidence that Mr. St. Onge provided notice to abutting landowners; confirmed by Mr. St. Onge's own admission that notice was not published in the *Journal Tribune*; and confirmed with the Town of Lyman that notice was not provided to the Town and the Town did not receive a copy of the license application. The Defendants were provided with reasonable opportunity to provide proof that the public notice and municipal filing requirements were satisfied and have been unable to do so. Without public notice or filing with the town, the application cannot be processed and the license cannot be issued. See 06-096 CMR

521(3)(a)(2) & (4)(e). By failing to publish public notice and file an application with the town as required by Department rules, the Defendants have failed to fulfill the requirements of Paragraph 1 of the Consent Decree and Order and are, therefore, in violation of the Order.

Paragraph 2 of the Consent Decree and Order requires: "[b]y December 18, 2007, Winterwood Farm and Beltie shall supplement the pending solid waste minor revision application (Department application #S-021773-CF-F-M) consistent with the materials identified in a pre-application meeting, the Department's rules for solid waste facilities *General Provisions*, 06-098 CMR 400 and Processing Facilities, 06-096 CMR 409, and all other applicable State statutes and rules." These materials are necessary to provide the Department with sufficient information relative to leachate collection, containment and disposal, and relative to stormwater management.

On October 12, 2007, the Department sent a letter to the Defendants asking them to contact the Department to schedule a pre-application meeting as specified in Paragraph 2 of the Order. During an inspection by Department staff on November 7, 2007, the Defendants' principal, Robert St. Onge, stated he did not intend to schedule a pre-application meeting and that he was doing nothing to supplement the application. See Affidavit of Michael S. Clark at paragraph 15. The Department sent the Defendants another letter on November 15, 2007, this time taking the affirmative step itself of scheduling the pre-application meeting for November 28, 2007. On November 23, 2007, the Department received a fax letter from Mr. St. Onge stating that he would not be attending the meeting. The Defendants did not reschedule the meeting, nor have supplemental materials been submitted to the Department as required by Paragraph 2 of the August 10, 2007 Consent Decree and Order.

Paragraph 3 of the Consent Decree and Order required that: "[a]t the time materials are submitted pursuant to paragraph 2 [of the Order], Winterwood Farm and Beltie shall submit to the Department's stormwater management program a Notice of Intent to Comply under the State's General Permit pursuant to Maine's Multi Sector General Permit for Stormwater Discharge Associated with Industrial Activity." The Defendants have not filed a Notice of Intent to Comply, in violation of Paragraph 3 of the August 10, 2007 Consent Decree and Order.

Paragraph 5 of the Consent Decree and Order requires that the Defendants allow the Department, or its authorized representatives, access to the premises and its records for the purposes of monitoring and inspection. On August 21, 2007, Department staff contacted the Defendants as a courtesy to advise Defendants of a facility inspection scheduled for August 24, 2007. See Affidavit of Michael S. Clark at paragraph 7. Defendants, through Robert St. Onge, denied the Department access to the Winterwood facility during an August 23, 2007 telephone conversation. See Affidavit of Carla J. Hopkins at paragraph 6. Department staff scheduled another inspection of the facility for the afternoon of Thursday, December 6, 2007. On Tuesday, December 4, 2007, the Department's staff left a telephone message for the Robert St. Onge notifying him of the intended inspection. On the morning of December 6, 2007, Robert St. Onge contacted the Department's staff and stated that they would not be allowed on the premises "until we get this through the lawyers." See Affidavit of Michael S. Clark at paragraph 20.

The Defendants' refusals to allow the Department's staff access to the premises for the purposes of inspection and monitoring is in violation of Paragraph 5 of the August 10, 2007 Consent Decree and Order.

Maine Rule of Civil Procedure 66(d) establishes a contempt remedy for the Defendants' violation of the Court's August 10, 2007 Order. This proceeding may be initiated on a party's

motion supported by an affidavit that sets forth relevant facts. See M. R. Civ. P. 66(d)(2)(A). The Plaintiff has satisfied this requirement with the attached contempt motion, affidavits of Department staff Michael S. Clark, Carla Hopkins and Gregg T. Wood, and affidavit of Lyman Town Clerk Shirley A. Harrison. Pursuant to Maine Rule of Civil Procedure 66(d)(2), the Department requests that the Court set this matter for hearing, and order that a contempt subpoena be served on the alleged contemnor no less than 10 days prior to the contempt hearing.

Dated: 2/8/08

Respectfully submitted,

MARK A. RANDLETT
Assistant Attorney General
Maine Bar No. 2784
6 State House Station
Augusta, Maine 04333-0006
(207) 626-8800
Attorney for the Maine Department of
Environmental Protection

## NOTICE

Pursuant to M.R.Civ.P. 7(c), matter in opposition to this motion must be filed within 21 days, unless another time is provided by the Rules or set by the Court. Failure to file such a timely opposition will be deemed a waiver of all objections to the motion, which may be granted without further notice or hearing.

# SCHEDULE A
## INJUNCTIVE RELIEF AND COERCIVE PENALTIES REQUESTED

1. That the Defendants immediately cease the discharge of pollutants to waters of the State;

2. That, within five (5) days of the date of the Court's Order, Winterwood Farm and Beltie be required to submit an application that is complete for processing for a spray irrigation wastewater discharge license for the Winterwood Compost Facility consistent with the Department of Environmental Protection's (the "Department") rules for *Applications for Waste Discharge Licenses*, 06-096 CMR 521, and all other applicable State statutes and rules, as set forth in Paragraph 1 of the Consent Decree and Order entered by the court on August 10, 2007.

2. That, within thirty (30) days of the date of the Court's Order, Winterwood Farm and Beltie be required to supplement the pending solid waste minor revision application (Department application #S-021773-CF-F-M) consistent with the Department's rules for solid waste facilities, *General Provisions*, 06-096 CMR 400 and *Processing Facilities*, 06-096 CMR 409, and all other applicable State statutes and rules, as set forth in Paragraph 2 of the Consent Decree and Order entered by the court on August 10, 2007. The materials must at least include a: detailed and scaled site plan fully depicting the facility's current configuration; stormwater management plan; leachate management plan; erosion and sedimentation control plan; and comprehensive inspection and maintenance operations manual.

3. That, within thirty (30) days of the date of the Court's Order, Winterwood Farm and Beltie be required to submit to the Department's stormwater management program a Notice of Intent to Comply under the State's General Permit pursuant to Maine's Multi Sector General Permit for Stormwater Discharge Associated with Industrial Activity, as set forth in Paragraph 3 of the Consent Decree and Order entered by the court on August 10, 2007.

4. That the Defendants allow the Department, or any authorized representative to:

   A. Enter upon the Defendants' premises where a regulated facility or activity is located or conducted, or where records must be kept under the conditions of any applicable Department licenses.

   B. Have access to and copy any records that must be kept under the conditions of any applicable Department licenses;

C. Inspect any facilities, equipment (including monitoring and control equipment), practices, or operations regulated or required under any applicable Department licenses; and

D. Sample or monitor for the purposes of assuring compliance with any Department licenses at any location within the facility regulated by said applicable Departmental licenses.

5. That the Defendants allow the activities described in Paragraphs 4(A) through 4(D) to be conducted at any reasonable time. Business hours, which shall include any time from 8:00 a.m. to 5:00 p.m. on any weekday which is not a legal holiday, shall be considered reasonable per se. Activities conducted during non-business hours may also be reasonable based on the circumstances.

6. If the Defendants fail to comply with any of the requirements set forth in Paragraphs 1 to 5 within the time specified, or in the event the Defendant's are denied any applicable license:

   A. That the Defendants be required to immediately cease the acceptance or receipt of any solid waste or residual waste, as defined in the Department's solid waste management rules, *General Provisions*, 06-096 CMR 400, or any other material intended for composting, at the Winterwood facility.

   B. That, within four months of the date of the Court's Order, the Defendants be required to remove all solid waste, residuals, unprocessed compost, and processed compost from the Winterwood facility and dispose of the material in a lawful manner.

   C. That, if the Defendants continue to process any solid waste, residual, or other material intended for composting at the Winterwood facility prior the deadline for removing compost and compost materials from the facility set forth in Paragraph 6(B), that such processing be conducted consistent with applicable laws, rules and orders, including, but not limited to, the *Maine Solid Waste, Septage, and Hazardous Waste Management Act*, 38 M.R.S.A. § 1301–1319-Y, the Department's solid waste management rules, *General Provisions*, 06-096 CMR 400 and *Processing Facilities*, 06-096 CMR 409, and any Department licensing Orders (and materials incorporated therein) issued to the Defendants.

   D. That, after all solid waste, residuals, unprocessed compost, and processed compost are removed from the Winterwood facility, or within four months after the date of the Court's Order, the Defendants be required, in accordance with the requirements of 06-096 CMR 409(4)(I), to submit a closure plan to the Department for closure of the Winterwood facility with the proposed closure date being 91 days from the date the plan is

submitted. The closure plan must be submitted as a proposed minor revision to the existing facility license.

7. That the Defendants be required to pay to the Treasurer, State of Maine a coercive penalty in the amount of $1,000.00 for each violation of paragraphs 4 and 5; and a coercive penalty in the amount of $100 per day for violating the provisions of paragraph 6; and that the Defendants are jointly and severally liable for the payment of these penalties.